Marshall, Chief Justice.
This suit is brought to enjoin judgments to a large amount obtained by the defendant Samuel Gist, against the intestate of the complainants, as surviving partner of Moss Armstead Co., Richard Hill &f Co., Richard Booker fy Co., and William Watkins &f Co.
The points made by the counsel for the complainants are,
1st. That their intestate was in such a state of mental derangement when the suits were instituted, and the judg *290 ments complained of were rendered, that those judgments not to bind him; and his representatives ought yet to be permitted to defend his estate against the claims on which they are founded.
2ndly.. That he is not liable for the debts of Moss Arm-stead Co., and Richard Hill if Co.; because he was never a member of either of those firms.
3dly. That Samuel Gist is greatly indebted to their intestate on private account; which debt ought to be opposed to the debts due from him as surviving partner of Richard Booker if Co., and William Watkins if Co.
Without going into a minute investigation of the testimony respecting Mr. Tabb’s state of mind for several years before his death; or determining, whether its derangement was so complete, during the whole of that time, as to invalidate any specific contract he might have entered into, it is sufficient to observe, that the condition of his mind was certainly such, as might well account for his having failed to search out, and set up, a real defence, at law; and therefore, if he possessed such real defence, the judgments ought not to preclude his representatives from it now.
The question, whether he was a partner of either or both the concerns of Richard Hill &/■ Co., and Moss Arm-stead if Co., is therefore considered as now perfectly open, to be decided on such testimony as may be adduced by either party.
It is admitted that Mr. Tabb was a partner of Richard Hill if Co., and that Richard Booker if Co. held an interest in Moss Armstead if Co. and Richard Hill if Co.: But it is denied, that Mr. Tabb knew of that interest; and it is contended, that he could not be made a partner of those firms by any act of his copartners, or otherwise, than by his . own consent.
It is also admitted, that Gist was unacquainted with the members of either Richard Hill if Co., or Moss Armstead if Co.; that he did not credit them on the confidence, that Richard Booker if Co. were of the partnership: and, of *291 consequence, that the accountability of Mr. Tabb, for them, cannot be maintained, on the ground of their being led to consider him as a partner.
It was stated by one of the counsel for the defendants, that, being bound by all the acts of the company, Mr. Tabb became a member of any copartnery into which Richard Booker &¡- Co., should enter, whether he did, or did not, assent individually to being engaged.
To this opinion, in the latitude in which it was laid down, I cannot subscribe; and, if in the progress of the suit, it should be deemed necessary to insist upon it, and the gentleman who has advanced it, still retains it, I will thank him to furnish me with those authorities, on which, he may rely. The opinion to which I now incline is, that the assent of any member of a particular firm, is necessary to engage him as a member of a new firm; and that the general authority given by all to each, or even to the acting or managing partners, to bind the whole company, does not extend to the erection of new companies, composed of new members.
In order to subject Mr. Tabb as a partner of Richard Hill Co., and J\ioss Armstead Co., his consent to become a partner must be shown. But to show this consent, an express declaration from himself cannot be considered as indispensible; other testimony ought to be received, and circumstances must be resorted to in order to ascertain the fact.
It is relied upon, by the counsel fcr the defendant, as prima facie evidence of his assent, that Booker and Field cannot be presumed to have engaged the firm in a new partnership, without his approbation.
The circumstances of the company strongly support this presumption. The members of it resided at no great distance, and its business was conducted almost under the eye of Mr. Tabb. In the ordinary course of human affairs, he must frequently have fallen in with his partners, and have made some enquiries into the affairs of the company. It is presuming too much to suppose he could have remained *292 uninformed of a circumstance so interesting to himself, as that Richard Booker &r Co., of whom he was one, had entered into a new partnership; and, if he did know it, and made no objection to it, his consent to the transaction would very certainly be implied. It is not stated that the members composing the firms of Richard Hill $/• Co., and Moss Armstead 8f Co., were concealed from the world ; or less known than is usual on such occasions. Nor is it stated, not to have been a matter of notoriety, that a share in each was held by Richard Booker 8f Co. I cannot, therefore, presume any extraordinary concealment to have been used, or that Mr. Tabb■ was unacquainted with a circumstance which it so much concerned him to know, and which it was so much in his power to know.
This presumption has been met by the complainants, who state that their intestate withdrew himself in 1771 from the copartnery of Richard Booker &f Co., and might therefore very well be presumed no longer to enquire concerning their transactions.
The articles of agreement entered into with Shore, in 1774, seem to me to be very strong on this point. In that paper, Tabb states himself one of the surviving partners of the company: he contracts with an agent for the management of its affairs; binds himself for.the salary of that agent, whom he obliges to account to him as well as to Theophilus Field, and to pay him as well as Field, the money which might be collected. If he had left only his name to the company, and had no real interest in it, this agreement would, most probably, have been expressed in very different terms. Another evidence on this subject is, I think, his opening a letter to Richard Booker Co. It is a liberty which only a member of that company would have taken. The counsel for Mr. Tabb’s administrators, endeavour to account for it by stating that the London mark was on the letter, and might well be considered by him as containing a dun. That, I believe, does not follow. Letters from London to American merchants are not necessarily written for the purpose of *293 demanding money. But should this even be conceded, the fact would still evidence a solicitude to enquire into the affairs of Richard Booker Co.; and that solicitude would have informed him they had taken an interest in the other
Another circumstance of some weight with me, is furnished by the correspondence with Gist. Richard Booker Co. (which Gist considered as Tabb), had recommended Moss Armstead Co., and Richard Hill Co.; and Gist complained of their want of punctuality. He enquires who they are, and employs Tabb to collect from them. It is scarcely possible, that, under such circumstances, Tabb should not learn that Richard Booker &f Co., were interested with them.
That an open letter, directed to Richard Hill Co., should be among Tabb’s papers, is not a circumstance of entire indifference. It is true, that letter may have been obtained by his administrators since his death, or may have been received by himself, after he was rendered liable as a partner. If so, these, or any other circumstance tending to do away the influence arising from being in possession of such a letter, may, and ought to be shewn.
It does not appear when Tabb, if he ever did, withdrew from Richard Booker &¡- Co.; or when the two other companies were formed. It is said by the plaintiff’s counsel, that he withdrew in 1771; and, in January 1772, Gist writes to Tabb concerning Richard Hill 8f Co., as his correspondents, and asks concerning their punctuality. It is probable that the new companies were formed prior to tho date of the supposed withdrawing; and if so, then, according to the view I have been taking, he would be responsible, whether he withdrew or not: But, if afterwards, (supposing the withdrawing can be proved,) even then, according to the same view, he may be liable to one not knowing that he had withdrawn, as he suffered his name to be used, without any public declaration of dissent.
*294 ^ It is unnecessary, however, to decide this question abso- # # lutely now; other testimony may be obtained, which may change its present appearance. There may, perhaps, be the testimony of merchants of that day to show that it either waSj or was not understood that Richard Booker Sf Co. had an interest in the two firms of Richard Hill Co. and Moss Armstead Of Co., or other circumstances may be adduced to influence the case. But I have thought it right to signify the impressions received from the testimony now in the cause. If nothing further should appear, the opinion to which I strongly incline is, that Mr. Tabb cannot be considered as ignorant of the copartnership formed by Richard Booker &f Co. with Moss Armstead &f Co. and Richard Hill &f Co.; and, if he was not ignorant of those copartnerships, his silent acquiescence, under their use of the firm, to which he was known to belong, is evidence of his consent, that they should use it.
The most material enquiry in the case is, to what commissions was the defendant, Samuel Gist, entitled, on the sales of the tobaccos shipped to him by Tabb ¶
The bill charges expressly an agreement, entered into, with Samuel Gist, by John Tabb, while in England in 1768, that he should sell the tobaccos shipped to him by Thomas Tabb 8f Son, at a commission of ten shillings per hogshead.
The counsel for the complainants suppose this allegation of the bill to have required a much more explicit answer" than jt has received; and presuming it to have been evaded, infers from thence a consciousness, in the defendant Gist, of its truth. If this explicit allegation had not been as explicitly answered, the answer might very properly have been excepted to, as insufficient. But, on examining the answer it does not appear, to me, liable to the objection, which has been made to it.
The defendant, Gist, states, that Thomas Tabb &f Son had, in 1768, shipped, in different vessels, a very large quantity of tobacco to Hebert, Burkett Sayre, and had *295 drawn bills, on them, to a great amount. That John Tabb preceded both the tobacco and bills, and on his arrival in London, found Debert, Burkett &f Sayre, unable to pay his bills, and unfit to be trusted with the sale of his tobacco. That, from friendship to Tabb, and compassion for his distress, he consented to sell the tobaccos consigned, to Debert, Burkett &¡- Sayre, on the same commission, at which the original consignees were to have sold them. That Tabb applied to him to sell future consignments on the same terms, but he peremptorily refused to do so. The answer then, without stating any agreement respecting commissions on future consignments of tobacco, proceeds to detail the advantageous terms on which he agreed to transact the other business of Thomas Tabb Son in London. In this answer no agreement whatever, respecting future commissions, on the sales of tobacco, is stated.
In the supplemental answer, this subject is again taken up. The agreement for the ten shillings per hogshead is again declared to have been limited to the sales of the cargoes consigned to Debert, Burkett &/■ Sayre; and that whole transaction is stated more in detail. The answer then proceeds to aver, explicitly, that Gist refused to extend the agreement to future consignments, and that, with respect to them, it was positively contracted that he should sell on a commission of two and a half per cent, with the addition of half per cent, for guaranteeing the debts.
The answer adds another circumstance of infinite importance, which, if untrue, it is incumbent on the complainants to disprove. It is, that, for seven years, he continued to transmit accounts of sales and accounts current to Thomas Tabb, and Thomas Tabb &f Son, conforming to this idea of the agreement between them, and that they never objected to such accounts. It is, I say, incumbent on the complainants to disprove it, because, if it is untrue, they must be supposed to possess the means of shewing its untruth.
The counsel for Mr. Gist have insisted very strongly on the evidence furnished by the answer, which, they say, is *296 explicit, and is responsive to the bill. It is admitted to be so; and unless there be sufficient reason for questioning the verity of these allegations of the answer, they must decide . the cause.
Without saying what the opinion of the court may be, when that further information shall be received, which will now be required, I think the different averments of the defendant’s answer, and the documents referred to, afford sufficient reason for believing that some agreement, other than that stated by Mr. Gist, must have been entered into by the parties; and consequently that a decision ought to be suspended for further enquiry.
I shall not rest, much, on the omission in the first answer to state-what was the real contract to govern future sales to be made, by Gist, for Tabb; because, although such a statement might have been expected, yet the bill does not require it; and the omission to state it was therefore excusable. But I think the motives leading to the contract for ten shillings per hogshead, on the tobaccos consigned to Bebert, Burkett 8f Sayre, deserve some notice. Mr. Gist was aware that his consenting to sell a considerable quantity of tobacco for a commission of ten shillings per hogshead would lead to the expectation of his continuing to sell on that commission, and might create some presumption that an agreement, to that effect, was actually made. He, therefore, searches for a motive which should discriminate between that particular transaction and the general course of business. The motive which he assigns is friendship and compassion for Tabb.
One of the most opulent merchants of Virginia, having near a thousand hogsheads of tobacco at his disposal, is not much an object of compassion. But Mr. Gist very soon forgets the motives assigned for his own conduct. He considers himself as absolved from the contract he had made, by the act of Mr. Tabb in selling himself the cargo of the Molly, which amounted to about five hundred hogsheads. Now if, from motives of friendship and compassion, he had *297 consented to sell all the tobaccos consigned to Debert, Burkett 8f Sayre, at a commission which did not compensate his trouble, I cannot conceive how a diminution of the quantity to be sold, on such terms, could be considered as injurious to him. But the compassion and friendship of Mr. Gist, displays itself in a still more extraordinary manner. He represents himself to have purchased originally the whole cargo of the Molly; but that Tabb afterwards sold a part of it, for about £ 400 more than he was to have given. This is a profit to which he thinks himself, in equity, entitled; and because another person in the market purchased the commodity of his friend at a much higher price than his compassion would allow him to give, he considers it as so much profit withdrawn from himself, for which he is entitled to compensation. In still another view, the statements of Mr. Gist on this subject deserve to be noticed.
A comparison between the answers of Gist and Shore, on the subject of commission, suggests a remark too, not altogether unworthy of attention. Mr. Gist says that Mr. Tabb objected, since the conclusion of the war, to the charge of commissions in his accounts, and that he had fully explained that subject in his letters to Mr. Shore. We should expect then that Mr. Shore would, in his answer, altogether omit the subject, or give the explanation he had received from Mr. Gist. He does neither. He would appear to have received no information whatever from Gist on this subject, and to remark, only, on the statement made by the complainants in their bill. This would certainly indicate that the explanation, given him by Mr. Gist, was not such as Mr. Shore chose to rely on.
The parties admit some agreement in 1768. Tabb says it was for future consignments; Gist, that it was for those addressed to Debert, Burkett &f Sayre.
In examining the testimony in the cause, other than is to be found in the answers themselves, the first document is that of October 10th, 1768, which says, “your son, no *298 doubt, has acquainted you with his selling me the Thomas’s cargo, and the price, as also the terms on which I have agreed t0 sell the Molly’s cargo when it arrives, but as these things , _ , are out of the common road, 1 must beg you not to mention any person living.”
This letter plainly relates to a single cargo. Not to future consignments, nor to the whole tobacco consigned to Hebert, Burkett 8f Sayre.
The next letter is December 31, 1768, which says, “your son will inform you the terms we are upon as to the com.mission, as well as that on which I am to sell your tobacco; which I desire may be an entire secret.” At the foot of this letter is a memorandum made by Mr. Tabb, at what time is unknown, in these words, “ the terms for selling the tobacco was ten shillings per hogshead for commission, and we to have every advantage for king’s allowance, &tc.”
This letter is averred by the defendant to relate, only, to the cargo of the Molly, and in this he may be correct; but I will state some reasons in support of a supposition that he has, perhaps, confounded dates, and that this observation was rather designed for the letter of October 10th, than that of December 31.
Mr. Gist had already mentioned the Molly to Mr. Tabb, and had expressed a confidence, that his son had informed him of the terms on which that cargo was to be sold. When speaking of a contract to have related to a single vessel, he uses terms applying, only, to a single vessel; when, then, he changes his language, and uses terms applicable to the business generally, there is reason to suppose he speaks of a contract embracing the business generally. He says too, your son will inform you.” A phraseology which contrasted with that of the letter of October 10th, strongly indicates a different contract, of which information had not probably been before given. It is the language which would be used, if the son was then about to sail, or had just sailed, for America; and would give the information verbally. The idea, that the fact is so, receives some support from the cir *299 cumstance that the letter of December 31st, is addressed to Thomas Tabb, and that of March 25th following, is addressed to Thomas Tabb 8f Son.
It is true, that the words “ your son will inform you the terms we are upon as to the commission, as well as that on which I am to sell your tobacco,” may be limited by other testimony to a single cargo; but it is not less true, that the words naturally import a general contract; and when it is observed that the agreement, respecting the commission, is confessedly a general one, there is the more reason to believe that, that respecting the tobacco, made between the same persons, probably at the same time, relative to a branch of the same business, and communicated in the same sentence, and with the same mode of expression, was of the same extent. The whole agreement then subsisting, may have respected a single cargo, and the agreement may have been extended. This is said to be explained by the letter of October 10th. I think so.
The next letter, upon this subject, is not to me conclusive; but I think it rather less equivocal than that which has just been noticed.
It is the letter of the 25th of March, 1769, and is addressed to Thomas Tabb Son. In that letter Mr. Gist states his conviction that the extravagant charges on goods, together with the large commissions on tobacco, have driven the consignment business from London: He is therefore determined to do business, with punctual people, on the very best terms.
This resolution is, certainly, not limited to a single transaction, but is to govern permanently; for it is to retain the consignment business, which was leaving London in consequence of the “ extravagant charges on goods, together with the large commissions on tobacco j” and the business he was determined to do “ on the best terms,” and clearly on better terms than those which had driven the consignments elsewhere, related to the charges on goods, and the commission on tobacco.
*300 He then proceeds to state to Mr. Tabb, the terms on whicffhe shipped his goods, and did his insurance business, which he adds, “ with the commission I charge on the sale of your tobacco, will enable you to ship tobacco as well to this port, as to any other place in the kingdom : indeed the prices are always better here, but it is the great charge attending it that destroys the sale.”
A criticism on this sentence cannot be necessary to shew that the words, according to their natural import, relate to the general course of doing business; and, if to any specific agreement whatever, to one which extends to the business generally.
Mr. Gist, however, in his answer, avers that these expressions allude only to an agreement to sell the' cargo of the Nancy, and that no agreement, at the rate that cargo was sold, was ever made for future consignments.
This may be true. Admitting it to be true, the necessary enquiry is, what then is the operation of this letter ?
An agreement has been made between Gist and the younger Tabb for his father, for the sale of a particular cargo of tobacco, at a specified commission. They separate, and the younger Tabb returns to America, and reports the contract to his father. Gist then writes a letter to Tabb Son, in which he represents the high charges on goods, and on the sales of tobacco, as the causes which had driven the consignment business from London, whither the price of tobacco would allure it, but for these causes. He is determined to do business on better terms. You perceive, he says, what I have charged on the shipment of your goods, and this, with the commission I charge on your tobacco, will enable you to ship to this port. What commission is here alluded to ? Mr. Gist says the commission on the sales of the cargo of the Nancy. Be it so. But how was that? The- letter is clearly designed to affect his future conduct through the medium of his future interest. It must then be understood as a proposition for the transaction of future business. The present commission on the cargo of the Nancy, as well as *301 the present charge on insurance, and shipment of goods, must be understood as constituting the rule for future charge, or the letter is deceptive.
It would seem as if Mr. Gist was aware of this, and therefore his answer proceeds to state, that in consequence of the sale, by Mr. TabVs agreement, of the greater part of the tobacco consigned to Hebert, Burkett &f Sayre, he had considered himself as absolved from the contract of selling the cargo of the Nancy at ten shillings per hogshead, and had determined to charge two and a half per cent, on the gross amount of sales, and this was the commission particularly agreed on for the business generally with Tabb, and the particular commission alluded to in his letter of the 25th of March.
Let us enquire how far this explanation will answer the purpose.
The letter does not mention the amount of the commission, but plainly alludes to a charge supposed to be known to Mr. Tabb. This, he says, was the charge on the sales of the cargo of the Nancy. Mr. John Tabb left England in the expectation that this cargo was to be sold according to the original contract, for Mr. Gist does not alledge that he ever told Mr. Tabb he intended to charge a higher commission than was stipulated. The sales of the cargo did not accompany this letter. They were not sent till June in the following year. How, then, could Mr. Gist refer to two and a half per cent, as the commission on the sales of the cargo, when he had stipulated to sell for ten shillings, and had never informed Mr. Tabb of his internal resolution to charge a higher commission ? Admitting Mr. Tabb to understand this as referring to the sales of that cargo, he must understand it as referring to ten shillings per hogshead commission: because that was the agreement, and it was not changed.
But it may be supposed, that this is mere inaccuracy of expression, and that the words refer to the general agreement of two and a half per cent, commission asserted in the an *302 swer. Even this will not serve the purpose. The letter apparently alludes to a commission lower than that which it complains of as too high, and the answer expressly states, that the comtriission, alluded to was the customary commission.
The defendant also states, that he determined to charge a commission of two and a half per cent., when the letter of the 25th of March was written, and that this is the commission that letter alludes to.- Yet, in his letter of the 9th June, 1770, he says, “ I have already wrote you by this opportunity, and sent sales of your 315 hogsheads by the Nancy last year, which you will see are made out in the common way, as I did not care to let even my clerks know it was.to be made out different. I will give you credit for the difference in account current.”
Even so late as the 24th March, 1771, he says, “You will perceive in your account current, I have not charged you any interest; that shall come in against the commission on your tobacco, which I did not care should be seen in the counting house.” Thus two years after the letter was written, which Mr. Gist asserts alluded to a different commission from that which had been stipulated, he-continues to assure Mr. Tabh that the stipulation will be observed.
This is not all. There is no reason to suppose the account current, alluded to, contained only the sales of the cargo of the Nancy. His expression is, “ I send all your accounts;” and in a different part of the same letter, he speaks of the sales of a different cargo, as being transmitted. There is no reason to suppose that the commission on the tobacco, which is spoken of generally, is not the commission on all the tobaccos of which accounts of sales were rendered by that conveyance, and the letter makes no discrimination between the commission chargeable on the different cargoes.
I have still another observation to make on this subject. There .is much reason to doubt, whether the Nancy was really consigned to JDebert, Burkett Sayre. The allegation *303 of the answer is not, in this respect, responsive to the bill, and consequently is not evidence.
It does not appear when Mr. Tabb arrived in England. No doubt, on his first arrival, he informed his father of the state of the house of Debert, Burkett &f Sayre; and, of consequence, no further consignments would be made to them. How soon this information may have been given, does not appear, but, it certainly, very considerably preceded the 10th of October, 1768; because, on that day, Gist gives his father notice, that he had before that time agreed to sell the cargo of the Molly, and purchased from John Tabb, the cargo of the Thomas, and had loaded her with goods, by John Tabb’s order, to the amount of £1137. 8. 0|. When the Nancy arrived is not stated; but it was certainly some time in the year 1769. The letter of June 1770, speaks of her as a vessel arriving in 1769. These dates make it very probable, though by no means certain, that she was originally consigned to Gist himself.
These appearances, from the answer and letters, the counsel for Mr. Gist have endeavoured to account for in different ways, but they have used one argument which would have very great weight if true; and which, if clearly supported by the fact, might perhaps be conclusive. It is that the accounts current, transmitted by Mr. Gist, have regularly been received by Mr. Tabb, and never complained of, For this assertion they have the evidence of the answer, and from the nature of mercantile transactions, it must ho supposed true, if not disproved by the complainants.
The complainants have adduced several letters on which they rely, but there are two which seem to me really to evidence that Mr. Tabb always considered himself as entitled to the credit he now claims. They are of March 10th, 1773, and March 6th, 1774.
These letters demonstrate that Mr. Tabb claimed a credit for a deduction on account of the commission, and his own secret mode of transacting the business might prevent their complaining in a different manner; but they do not shew *304 what that deduction was. For this, the memorandum at ^ f00t 0f the ]etter 0f the 31st of December, is appealed to. This, the answer, avers Mr. Gist to be entirely ignorant of; and from the mode of expression used, there is reason to believe the memorandum was made in Virginia. I will not now say, what its influence ought to be. The answer also admits the contract for the sales of the tobaccos consigned to Debert, Burkett Sayre, to have stipulated for a commission of ten shillings per hogshead. These circumstances would certainly favour the opinion, that the difference between the commission charged, and ten shillings per hogshead, is the credit to which Mr. Tabb is entitled, if it shall be ultimately determined that he is entitled to any thing. But there are other circumstances of no inconsiderable weight, which would diminish this allowance. The answer, in the most explicit terms, denies an agreement to sell generally at ten shillings; and Mr. Giles, in his letter to Mr. Shore, of December 12th, 1797, states his information from Mr. Tabb, to be, that the business was to be done at half commissions. There is, then, a good deal of difficulty on this point; and if, on the production of the papers which will be directed, the opinion of the court should still be that the complainants are entitled to some deduction, it will then be necessary to determine what that deduction is.
It is very apparent, that' many letters and papers must have pass‘ed between the parties, which would throw' light * on this subject. The complainants, require that Mr. Gist should be directed to produce on oath all the letters he ever received from the intestate of the complainants. I have no objection to making such an order, but I think justice requires, that it should comprehend the complainants likewise. The letter book of Mr. Tabb, in such a case as this, ought to be exhibited. That a merchant doing business as extensively as Mr. Tabb, should be without a letter book, is a phenomenon in the mercantile world, which requires very clear testimony to be credited.
*305 The shipments made since the war, I consider as very clearly out of the contract. There is not only evidence in the case that Gist claimed the customary commission, but I am well satisfied that the war terminated the old contract.
The complainants also require, that Gist should be compelled to exhibit accounts of sales of the tobaccos in his hands in 1775 and 1776. If he has not already exhibited such accounts, it surely would be reasonable that he should do so. The bill does not alledge that they have not been received, and the answer states them to have been transmitted. If, therefore, to transmit duplicates would be any inconvenience to Mr. Gist, I certainly should not direct it; but as they may be exhibited without inconvenience, I have no objection to ordering them, though if any expense attends the filing them, it ought to be defrayed by the complainants.
There is another part of the case which may be of very considerable magnitude. The answer states that several calculations of interest have been omitted, to which the defendant Gist is entitled. The letters leave it not improbable that these omissions were designed to balance the commissions. Should the fact be so, and Mr. TabVs estate should be credited with the difference of commissions, it is reasonable that it should be debited with the omissions of interest. I give no opinion as to the fact; but I shall direct the commissioner to notice it in the account.
On these principles, the following decree is to be entered : This cause, which abates as to the defendant, Thomas Shore, by his death, came on to be heard on the bill, answers (that of Thomas Shore being read by consent), the depositions and other exhibits filed in the cause, and was argued by counsel. On consideration whereof, it is the opinion of the court that the complainants ought not to be precluded by the proceedings at law, from setting up in this court a just defence (if any they have,) against, the judgments in the bill mentioned. The several claims, therefore, on which the judgments against John Tabb, as surviving partner of Richard Booker 8f Co., William Watkins Sf *306 Co., Richard Hill Co., and Moss Armstead &/■ Co., were referred, are referred to one of the commissioners of this court, who is directed to examine, settle and report the same, stating such matters specially, as either party may require, or he may think fit. And the court is further of opinion, that if, as is in the bill alledged, any balance be due from Samuel Gist to the estate of John Tabb, on the various transactions between them, that balance ought to be set off from the judgments obtained by the said Samuel Gist, against the said John Tabb, as surviving partner of the several trading companies aforementioned, to ascertain which fact the accounts between the said Samuel Gist and the said John Tabb, are also referred to one of the commissioners of this court to be examined and settled by him. And he is specially directed to state the accounts between the parties on the following principles :
1st. So as to shew how they will stand, allowing the defendant, Samuel Gist, a commission of ten shillings sterling money of Great Britain, on each hogshead of tobacco shipped to him by Thomas Tabb &f Son, and John Tabb, previous to the -day of-, 1775, and sold by him on their account, or on the account of either of them subsequent to the 31st of December, in the year 1768.
2dly. So as to shew how the same accounts will stand on an allowance of one and one half per cent, commission on the gross amount of sales of all tobaccos shipped and sold by the same parties respectively, between the same periods.
3dly. In making up these accounts, he is to calculate interest on the sums due either of the parties, according to any special agreement which may be proved to have subsisted between them, or in default of such agreement being shewn, according to the custom of merchants; however, in the accounts rendered, such calculations of interest may have been omitted.
The commissioner is further directed also to state the accounts in such other manner as may be required by either of the parties, stating such matters specially as they or either *307 of them may direct, or he may think fit, and make report to the court in order to a final decree. And the more effectually to enable the commissioner to make up his report, it is further ordered and directed, that the said Samuel Gist do, on oath, exhibit and file with the clerk of this court, all the letters he has ever received from Thomas or John Tahh between the first day of January, 1769, and the-day of-, 1775, or if it be not in his power to produce such letters, that he state in like manner the cause of such disability. And he is further directed to file with the clerk of this court, such accounts of sales of all the tobaccos received by him prior to the signing of the preliminary articles of peace between the United States of America, and his Britannic majesty, to be sold on account of the said John Tahb, as had not been rendered by him previous to the last mentioned time.
And it is further ordered, that the complainants do file with the clerk of this court the letter book of the said John Tabb, or copies of all the letters written by him to the said Samuel Gist, previous to the-day of --, in the year 1775, verified on oath, or if there be no letter book, that they do, on oath, file all the copies which are, or have been, in their possession.
All which matters and things are decreed and ordered this 9th day of December, 1802 j and by consent of parties, general commissions are awarded the parties, to be executed before any notary public, upon giving reasonable notice thereof.