ELIJAH FILLEY V. PERRY WALKER ET AL.

[FILED JANUARY 28, 1890.]

1. **Instructions** given and refused examined, and *held*, rightly given and refused, except as to the ninth instruction, which, in so far as it relates to the defendant's set-off of $14, money borrowed of defendant, is overruled as error.

2. **An Assignment of Error,** based upon the overruling of twenty-two objections to testimony on trial, no ground of objection to either or any of the rulings being suggested or argued by counsel, is overruled *pro forma.*

3. **The Evidence** examined, and *held*, to sustain the verdict, except as to the $14, borrowed money and interest.

ERROR to the district court for Gage county. Tried below before BROADY, J.

*L. W. Colby,* and *R. S. Bibb,* for plaintiff in error, cited, on the first assignment of error: 2 Benjamin on Sales (Corbin), 1016–17; on the eighth and fourteenth assignments: Code, secs. 29, 42; *Mills v. Murry,* 1 Neb., 327; *Kellogg v. Lavender,* 9 Id., 419; *Mattis v. Boggs,* 19 Id., 698; Maxwell, Pl. & Pr., 33; Bliss, Code Pl., secs. 61, 62; on the thirteenth assignment: *Markel v. Moudy,* 11

Neb., 213, *Kersonbrock v. Martin*, 12 Id., 376; *City of Lincoln v. Beckman*, 23 Id., 682.

*Griggs & Rinaker*, and *Allen Beeson*, *contra*, cited, as to the third assignment : *Dubois v. Canal Co.*, 4 Wend. [N. Y.], 289 ; *Peltier v. Sewall*, 12 Id., 388; *Mead v. DeGolyer*, 16 Id., 636; *Graves v. White*, 87 N. Y., 465; *Sawyer v. Chicago & N. W. R. Co.*, 22 Wis., 410.

COBB, CH. J.

The defendants in error, Perry Walker and Samuel Barker, as partners in business under the name of Walker & Barker, brought suit against the plaintiff in error, Elijah Filley, in the district court of Gage county, to recover the sum of $5,138.18, alleging that in April, 1883, they contracted with the defendant for the purchase and delivery of 354 head of fat cattle [which amount was subsequently increased to 366 cattle and 51 head of hogs] and paid defendant thereon, April 5, 1883, $3,000, and on May 17, following, $1,000, and on June 22, following, $1,000; that of said number of steers the defendant delivered to plaintiffs 235 head, which were paid for in full, over and above former payments to defendant, at the time of delivery, and that the defendant refused and neglected to deliver the balance, 117 head of cattle, and refused to refund to the plaintiffs the amount of said former payments, aggregating $5,000, for which sum, with interest, this suit was brought.

For a second cause of action it was alleged that on June 20, 1883, at the time of the delivery of said cattle, there were two steers left with defendant which were not loaded on cars for transportation for want of room in the car, the steers having been paid for at the price of $138.18, and not subsequently delivered to the plaintiffs upon demand thereof.

The defendant answered in the court below, setting up

that on April 5, 1883, he entered into an agreement with said Walker for the sale and delivery of 366 head of cattle and 51 head of hogs at various places, to-wit:

Twenty head, at $6.25 per 100 pounds, to be delivered at Wilber on May 8, 1883, obtained from Henry Albert.

Thirty-seven head, at $6.25 per 100 pounds, to be delivered at Wilber in the first week in May, purchased from Wm. Steinmeyer.

Nine head, at $6.25 per 100 pounds, to be delivered at Wilber on May 15, 1883, purchased from G. H. Ross.

Thirty-eight head, at $6.25 per 100 pounds, to be delivered at Firth on May 15, 1883, purchased from John Yohe.

Fifty-six head, at $6.25 per 100 pounds, to be delivered at Firth on June 1, 1883, purchased from W. J. Harms.

Fifty head, at $6.25 per 100 pounds, to be delivered at Firth on June 15, 1883, purchased from J. M. Messerve.

Twenty head, at $6.25 per 100 pounds, to be delivered at Liberty on June 1, 1883, purchased of W. J. Dewey.

Fifty-one head of hogs, at $6.50 per 100 pounds, to be delivered at Hubbell.

Nineteen head of steers and one stag, at $6.25 per 100 pounds, delivered at Hubbell, both lots on June 1, 1883, purchased of Robert Kyle.

Seventy-four head of steers, at $6.25 per 100 pounds, to be delivered at Kerr's farm in Gage county June 1, 1883, purchased of Andrew Kerr.

Forty-three head of steers, at $6.25 per 100 pounds, to be delivered at Filley's farm June 15, 1883, the defendant's herd of cattle.

That plaintiffs paid defendant thereon the sum of $3,000, and that on said April 5, 1883, defendant entered into a further agreement with said Walker, representing the plaintiffs, for the sale and delivery of eight or more car loads of cattle at various stations on the line of the railroad at $6.25 per 100 pounds on or before the first of June following.

That accordingly he purchased 150 head of cattle, making over eight car loads, and offered to deliver them at the following stations of the Burlington & Missouri railroad:

Thirty-five head at Beatrice, purchased of W. W. Barnhouse.

Eighty head at Hubbell, purchased of George Tuttle.

Thirty-five head at Beatrice, purchased of Andrew Kerr.

That at the date for delivery, the market price having declined, Walker, on behalf of the plaintiffs, objected to receiving the cattle, and declined to comply with his agreement, it was then mutually agreed by defendant and by Walker, on behalf of the plaintiffs, that defendant should ship the eight car loads of cattle to Chicago, and deduct from the purchase price of $6 per 100 pounds one-third of all losses on sale in Chicago; that accordingly defendant shipped the 153 steers, and sold the same at Chicago, realizing, after deducting the expenses of shipment, the sum of $9,754.27, at weight of 202,560 pounds, costing, at $6 per 100, $12,153.60; that the loss amounted to $2,399.33; deducting defendant's one-third of the same the plaintiffs' loss was $1,599.54; that on May 18, 1883, Walker paid defendant, on this agreement of compromise, $1,000. The defendant alleges that in all of the transactions mentioned in his answer the said Perry Walker acted for himself and the said Samuel Barker as partners, and that on June 21, 1883, defendant loaned said Walker three several sums of money, amounting to $14, to be paid on demand, which is due and unpaid.

The defendant alleges that he complied with his agreement by delivering the twenty head of steers purchased of Henry Albert, and the thirty-seven head purchased of Wm. Steinmeyer, and the nine head purchased of G. H. Ross on May 1, 1883, and was ready and willing to deliver all of said cattle and hogs, but, at the request of plaintiffs he caused the cattle and hogs to be held beyond the time of delivery agreed upon as follows: thirty-eight head of steers

of Yohe until June 20 following, when they were delivered, the expense of keeping for the time extended being $45, which the plaintiffs were to pay; the fifty-six head of steers of Harms until June 20, when they were delivered, the expense of keeping for the time extended being $35.15, which the plaintiffs were to pay; the fifty head of steers from Messerve until June 20, when they were delivered, the expense of keeping for the time extended being $15, which the plaintiffs were to pay; the twenty head of steers from Dewey until June 21, when they were delivered, the expense of keeping for the time extended being $10, which the plaintiffs were to pay; the forty-three head of cattle of defendant's herd until July 13, when they were delivered, the expense of keeping for the time extended being $107.50, which the plaintiffs were to pay; the seventy-four head of cattle of Andrew Kerr until July 13, when they were delivered, the expense of keeping for the time extended having been paid by the plaintiffs.

That the defendant offered to perform his agreement, and deliver to the plaintiffs all the said cattle, and demanded that the plaintiffs perform their agreement and receive the cattle, and pay for the same according to the terms of their agreement, which they refused to do; and thereupon, upon due notice to the plaintiffs, the defendant transported and marketed the said 117 head of cattle and sold the same in Chicago, Illinois, at the highest market price, to-wit, the sum of $7,954.06 net, and with the 117 head of cattle, also at the plaintiffs' request, shipped to Chicago and sold the two head of steers which theretofore had been returned and left with defendant for keeping, at an expense of $15, which the plaintiffs were to pay, and which steers were sold at the highest market price, $114.92 net, and that the time and money necessarily expended in the transportation and sale of the cattle was $100, for which the plaintiffs are indebted to defendant.

The defendant further alleges that the following account

stated is a correct statement of the whole of the transactions mentioned, including the number of cattle bought and sold, their weight in the market, and the amount of proceeds received:

| | | |
|---|---:|---:|
| 366 head of cattle, weighing 472,487 lbs., at $6.25 | $29530 | 43 |
| 51 hogs, weighing 17,925 lbs., at $6.50 | 1165 | 12 |
| For keeping hogs and cattle during time extended | 232 | 65 |
| Money loaned | 14 | 00 |
| Two-thirds loss on 150 head of cattle (8 car loads) | 1599 | 54 |
| Money and services of Filley in shipment and sale of 119 cattle | 100 | 00 |
| Keeping and caring for two steers | 15 | 00 |
| Total | $32656 | 74 |

### CREDITS.

1883.

| | | | | |
|---|---:|---:|---:|---:|
| April 5th, cash | $3000 | 00 | | |
| May 18th, cash | 5000 | 00 | | |
| May 18th, cash | 1000 | 00 | | |
| June 19th, cash | 10000 | 00 | | |
| June 23d, cash | 5559 | 00 | | |
| July 17th, cash, proceeds of two steers | 114 | 92 | | |
| July 17th, cash, proceeds of 117 steers | 7954 | 06 | | |
| Total | $32652 | 98 | 32652 | 98 |
| Balance due Filley | | | $3 | 76 |

And the defendant Filley's answer further alleged that the foregoing was all the transactions between the said Filley and the said Walker and Barker, or either of them, and that the transactions stated in the plaintiff's peti-

tion are not otherwise than as stated in said answer; that he does not know whether the plaintiffs, Perry Walker and Samuel Barker, were partners, as alleged in said petition, or not; that said action is not brought in the names of the real parties in interest; that one D. S. Draper is equally interested with the said Walker and Barker in the event of this suit; and he denies each and every allegation in the petition, excepting such matters as are admitted, and asks judgment in the sum of $3.76 and costs of suit.

The plaintiffs replied and set up that on the 5th day of April, 1883, they contracted with the defendant to purchase from him 352 head of fat cattle, and not 366 as averred, but that afterwards they agreed the number should be increased to 366, and exhibit a true statement of their account of purchase as follows:

| 1883. | No. and Kind Delivered. | Owned by | Paid for keeping. | Total Amt. Paid. |
|---|---|---|---|---|
| May   1 | 37 head of cattle... | W. Steinmeyer.. | ............ | $2887 50 |
| May   1 | 20 head of cattle... | H. Albert......... | ............ | .1551 25 |
| May   1 | 9 head of cattle..... | G. H. Ross........ | ............ | 586 25 |
| June 20 | 38 head of cattle... | John Yohe........ | $45 00 | 3126 87 |
| June 20 | 56 head of cattle... | W. J. Harms..... | 35 15 | 4429 81 |
| June 21 | 50 head of cattle... | J. M. Messerve.. | ............ | 3676 06 |
| June 21 | 20 head of cattle... | W. J. Dewey..... | ............ | .1658 37 |
| June 22 | 19 head of cattle... | Robert Kyle...... | ............ | 1489 50 |
| June 22 | 51 head of hogs..... | Robert Kyle...... | ............ | 1165 12 |
|  |  |  |  | $20570 73 |

That for the extra trouble of defendant occasioned by the plaintiff's delay in receiving a portion of the cattle, plaintiffs delivered to the defendant a sow and seven pigs, which the defendant accepted in full payment of his extra trouble; that plaintiffs deny that they promised to pay the defendant any sum whatever by reason of failing to accept a portion of the cattle within the time agreed upon, but on the contrary the defendant agreed with them to make no charges whatever therefor; that they also paid the defendent the sum of $14 borrowed money, and that they did not

make any arrangement for the purchase of any cattle in addition to the 366 head mentioned, and that the matters set forth in the defendant's answer show a partnership between all the parties to the suit, and the plaintiffs deny each and every allegation in the answer contained.

The case was tried to a jury upon the issues joined, who found for plaintiffs, Walker and Barker, in the sum of $5,553.90; a motion for new trial was made, overruled, exceptions taken and judgment rendered on the verdict, to reverse which the defendant in the lower court, plaintiff in error herein, brings the case to this court by proceedings in error.

There are thirteen errors assigned, and sixteen presented by the counsel in their brief, which will be examined in their order, so far as necessary to a proper understanding of the case. Of these, fourteen are based on instructions given by the court to the jury.

1. That the court erred in instructing the jury, at the request of the plaintiffs, that if they found from the evidence that the defendant offered to deliver the 117 head of cattle in question, but coupled with such offer, as a condition, or demand, that plaintiffs should pay an additional sum, claimed to be due from them on another matter or contract, such act and demand was no sufficient offer to deliver the 117 head of cattle; defendant having no legal right to make his offer of delivery conditioned upon compliance with an agreement not connected with the delivery of the 117 head of cattle."

It is objected to this instruction that the court tells the jury that the transaction relating to the eight car loads of cattle was not connected with the delivery of the 117 head, while the claim of defendant, in the pleadings and the evidence, was that it was the same transaction, and whether it was so, or was not, was one of the questions in the case which the jury alone should have found.

It will be seen from the defendant's answer, *supra*, that

33

he alleges that on April 5, 1883, he contracted with Walker for the sale and delivery of 366 head of cattle and fifty-one hogs, and was paid thereon $3,000. And on the same day he entered into a further agreement with Walker, representing the plaintiffs, for the sale and delivery of eight or more car loads of cattle, at various stations on the line of the railroad, at $6.25 per 100 pounds, on or before June 1, 1883, with the statement that he purchased the eight car loads of cattle, and the hogs, from the various parties specified; and at the date of delivery the price of the live stock having declined in the market, Walker, on behalf of the plaintiffs, objected to receiving the cattle on that account, and it was then mutually agreed by Walker, on behalf of the plaintiffs, that defendant should ship the eight car loads of cattle to Chicago, Illinois, and deduct, from the price of $6 per 100 pounds, *one-third* of all losses on sales in Chicago; and accordingly defendant shipped 153 steers and sold the same in Chicago—in the words of the answer, "realizing, after deducting the expenses of shipment, the sum of $9,754.27 at weight of 202,560 pounds, costing, at $6 per 100 pounds, $12,153.60; that the loss amounted to $2,399.33, and deducting defendant's one-third of the same, the plaintiffs' loss was $1,599.54, and that on May 18, 1883, Walker paid defendant, on this agreement of compromise, $1,000.

From this pleading, it is clear that the defendant claimed the latter transaction to have been separate and distinct from the cause of action set out in the plaintiffs' petition. Aside from the fact that it is claimed that both contracts were made on the same day, they are distinct and distinguished from each other in important respects. It is true both relate to the purchase of cattle, and, as alleged, originally at the same price under both. But in the first instance the cattle were specifically described as from original owners, with dates and places of delivery as set up by the plaintiffs, and admitted by defendant, differing in these respects from

the several lots of cattle claimed to have constituted the eight car loads alleged to have been bargained for in the second instance.   It appears from evidence that the defendant claimed, in marketing the eight car loads of cattle, that there was a gross loss of $2,399.33, and that he refused to deliver to plaintiffs the remaining 119 head of cattle, under the first contract, unless and until the plaintiffs also paid him the sum of $1,599.54 as their share of losses on the eight car loads.

Now, I do not consider that the trial court erred in designating, in its charge, this sum of $1,599.54 as "an additional sum claimed to be due upon another matter or contract." Without examining critically, a second time, through the voluminous pages of the record to discover every particle of testimony applicable to this question, I will observe that the defendant having treated the two contracts as separate and distinct, no amount of testimony on his part would tend to change the issues under the pleadings.

While it is admitted that the defendant had a right to demand the full amount due on the original purchase of 366 cattle, as a condition of the delivery of the remaining 119, he had no right to demand also, as a condition to the delivery, an additional sum which the plaintiffs may have owed him on any other account whatever.

2. That the court erred in instructing the jury, at the request of the plaintiffs, "that if they believed from the evidence that the defendant refused to deliver the 117 head of cattle, unless Walker would pay him a balance claimed to be due him on another deal, then it would not be necessary for Walker to tender him the balance due on the 117 head, and if they should find from the evidence that by the usual course of dealings between the parties all the payments had been made by Walker's checks, without objections by defendant and that at the time the 117 head of cattle were shipped, Walker offered to receive them and to give his check for the balance due, and defendant did not

object to receiving a check in payment, but only objected to the amount because it did not include the balance claimed to be due from Walker on another deal, and refused to deliver the cattle for that reason alone, then Walker would have a right to treat the contract for the 117 head of cattle as at an end, and he would be entitled to recover back the amount previously paid on the 117 head," to which was added by the court, "*if* you find the other material averments of the petition in the plaintiffs' favor."

The plaintiff in error contends that this instruction is not based upon the evidence, and is not within the rule of law. While the evidence doubtless is conflicting, yet there is evidence in the bill of exceptions fully sufficient to support the instruction.    The plaintiff Walker, in his testimony, after restating the purchase by plaintiffs from defendant of the 366 head of fat cattle and 51 hogs, and the receipt of all except 117 head of cattle, and the time and manner of payment, and the leaving of two steers with the defendant to be redelivered with the remaining 117 head, testifies as follows :

Q. After receiving the cattle, as stated, how many were still remaining to be received of the 366 head?

A. There were 117 head besides the steers I had paid for that Filley kept ; there were two steers at Alberts that I could not put in the car; there were twenty there and I could not put in but eighteen, and Filley had a car load of steers he was taking to his place, and said he would take these along with his and keep them until he shipped his cattle, free of charge.

Q. Had you already paid for them?

A. Yes, I had paid for them.

Q. What did the two come to, and what did you pay for them ?

A. They came to $138.18.

Q. Did you ever receive these cattle, and do you know what became of them?

A. No, sir, I did not, and I do not.

Q. Did Filley ever tell you what he did with them?

A. He sent me a statement in regard to them.

Q. Has he ever paid you anything on accouut of them?

A. No, sir.

Q. At the time you received the cattle, as stated, all but the 117 head, was there any amount still remaining to be paid on the part of these cattle from you and Barker to Filley, or were they fully paid for at the time they were received?

A. All that I received were fully paid for.

Q. Were they paid for independent of the $3,000 check, and $1,000, and independent of the Kerr check of $1,000?

A. Yes, they were.

Q. That left $5,000 in Filley's hands?

A. Yes.

Q. And two steers?

A. And the two steers, yes.

Q. Did you ever get the 117 head of steers?

A. No, sir.

Q. State the facts in regard to them; who were the 117 head of cattle to come from?

A. There were seventy-four head to come from Kerr, and forty-three from Filley.

Q. Did you ever get them, and how came it that you did not?

A. No, sir, I never got them. When I went there for them Filley claimed that I owed him for some more cattle that he had shipped himself. I told him that I would have nothing to do with them. He wanted that I should pay the losses on some more cattle, and I told him that I would not have anything to do with it, and would not pay it, and he said I could not have the 117 head unless I did pay it.

Q. Did you pay him, there and then, the amount he claimed?

A. No.

Q. What became of the 117 head of·cattle?

A. Filley kept them.

Q. Do you know what he did with them?

A. He said he shipped them and I saw them on the cars.

Q. What did he say in regard to delivering them to you?

A. He said I could not have them, unless I would pay the losses on eight car loads that he claimed I had a two-thirds interest in. He said there were six car loads of the eight that had been shipped, and two car loads that had not been shipped. On these two car loads he estimated the losses.

Q. Do you remember what the amount of damages was that you should pay before he would let you have the 117 head?

A. I made a memorandum of it at the time I demanded the cattle, down there at the town of Filley, which I have here.

Q. From that, can you tell how much he demanded of you?

A. Yes; he demanded $6,692.76.

Q. And what part of that was for the losses on these eight car loads?

A. There was $1,504.83.

In his subsequent testimony he also states·that at the same time and occasion he produced his check book and offered to draw a bank check in favor of the defendant for the price of the 117 head of cattle remaining undelivered, and that defendant replied to the witness that he need not draw it, that he, defendant, would not receive it unless there was included in the check the amount of losses claimed on the eight car loads of cattle mentioned.

This is believed to have been a sufficient tender of the price, or, in other words, superseded a technical tender of

either legal or current money for the 117 cattle, and to my mind fully justified the instruction of the court.

3. The third error presented and argued is on the instruction of the court on its own motion, that "the plaintiffs allege that they bargained for 117 head of cattle from defendant; that they advanced to defendant on the agreed price $5,000; that they were ready and willing to comply with their part of the contract, pay for and receive the cattle accordingly; that defendant, in violation of his part of the contract, refused to deliver the 117 head of cattle, and that plaintiffs ask to recover the $5,000 with interest. The plaintiffs also seek to recover the value of two other cattle in defendant's possession which he failed to account for.

The objection of plaintiff in error to this instruction is that it is not a correct statement of the allegations in the first cause of action in plaintiffs' petition.

It is true that the petition alleges the purchase by plaintiffs from defendant of 354 head of fat cattle and payment thereon, April 5, 1883, of $3,000, and on May 17, $1,000, and on June 22, $1,000, but it also alleges that at the time of the purchase 235 head of cattle were delivered and "were fully paid for on delivery over and above the former payments."

This was such a severance of the contract in the pleadings that, being followed up by the evidence as it was, not only justified but called for the instruction as given by the court. It could not have misled or confused the jury, which an instruction setting out the original contract and the severance making the action apply only to the 117 head of cattle, as set up in the first cause of action, would have been more likely to have done. The contract being severable, and actually severed by the parties, as shown by the pleadings, and by, at least, considerable evidence, the original contract or that part performed, is only necessary to be considered for the purpose of properly distinguishing that part of it which remaining unperformed, as alleged

by the plaintiffs below, constituted the ground of litigation.

The cases cited by counsel for defendants in error, especially those of *Sawyer v. R. R. Co.*, 22 Wis., 403 ; *Graves v. White*, 87 N. Y., 463, and *DuBois v. Canal Co.*, 4 Wend. 285, fairly sustain this instruction. I quote the syllabus from the Wisconsin case :

"A contract to deliver 300 barrels of flour in lots of 100 each, payment to be made for each lot on delivery, is *severable;* and acceptance of payment for the last two lots on delivery was not a waiver of any rights of the seller arising out of the unauthorized delivery of the first lot by the railroad company without payment made."

Also that of *DuBois v. The Canal Company: "* There is not, it *seems,* any precise rule, which, when applied to the breach of a contract, certainly settles the question whether it is thereby abandoned or not; but if the act of one party be such as necessarily to prevent the other from performing on his part, according to the terms of the agreement, the contract will be considered as rescinded, and the party may resort to his *quantum meruit."*

It is the contention of the defendants in error—of which there is evidence to sustain—that they had contracted to purchase from the plaintiff in error 366 head of fat cattle at $6.25 per 100 pounds, that they had received and paid for all except 117 head, and had advanced to the plaintiff in error $5,000 on the 117 head, which the plaintiff in error refused to deliver under the said contract. Upon the principle of the authority cited, the defendants in error could treat the contract as severable, and that part remaining unexecuted as rescinded, and sue for the return of the money advanced on the unexecuted and rescinded portion.

4. This assignment of error is based upon the instruction of the court, of its own motion, that "the defendant in his answer, in addition to his answer to the cause of action stated in the petition, consisting principally of de-

nials, sets up an affirmative defense by way of set-offs. The substance of the set-off is that on April 5, 1883, plaintiffs agreed to purchase of defendant eight or more car loads of cattle at $6.25 per hundred pounds; that defendant, in compliance with such agreement, purchased over eight car loads of cattle, and offered the same to plaintiffs on April 30, 1883; that on said day the market having declined, the plaintiffs and defendant agreed that defendant should ship the eight car loads of cattle to Chicago, and deduct from the purchase price, of $6 per hundred pounds, one-third of all losses on the sale of said cattle in Chicago; that defendant accordingly shipped and sold the eight car loads of cattle, the same amounting to 153 cattle, in which the plaintiffs had two-thirds and defendant one-third interest; that the defendant asks against plaintiffs an account of this set-off, which he pleads in his answer, $1,599.54 and interest. The answer further alleges loans to the amount of $14 by defendant to plaintiffs, and some further claim for keeping cattle and hogs on time extended, and for time, money, and services in shipment and sale, which you will see more fully in the answer."

It is objected that this instruction is not a fair statement of the facts set forth in the defendant's answer, insomuch as it intimates that the answer consists principally of denials, when the very contrary is claimed.

It is scarcely necessary to say that the learned judge, in this charge, does not intimate that the answer consisted principally in denials, but, by way of recital, it is intimated that the answer, in direct reply to the allegations of the petition, consisted principally of denials; and this is usually the privilege of an answer to allegations of an adverse party. It is rarely that admissions of the cause of action are indulged in, or denials of the allegations of a petition are refrained from, whether they be true in fact, or merely conjectural. The instruction is principally confined to the substance of the set-off pleaded by defendant. It is not

suggested that the substance is not plainly and fully set out in the instruction; and I fail to see wherein it is either deficient or unfair in that respect. It informed the jury of the nature and substance of the defendant's claim to offset the demand of the plaintiffs, and left its merits to their discretion.

5. That the court erred in instructing briefly, of its own motion, that "the plaintiffs' reply denies the new matter contained in the answer, and alleges certain payments as shown in the reply."

The objection offered to this instruction is that it is incomplete, and insufficient to answer the issues involved. It is not suggested that it presents an erroneous fact or principle, or misleads the jury as to the issues. It is common on the trial of important causes to a jury, when, in the opinion of counsel engaged, the court fails to make its charge sufficiently comprehensive and impartial, and to fully present the issues involved, to present instructions, prepared by counsel, with requests to the court to give them to the jury, covering such points as may have been overlooked or omitted, and making complete that which seemed to be deficient. The fact that neither instructions nor requests were presented, or made, by the counsel who tried the case for the defendant, in the court below, forces the conclusion that additional instructions were not deemed necessary when the case was submitted to the jury. And the fact that no authority or precedent is cited in the brief to sustain the objection of counsel, goes far to warrant the opinion that there is no reversible error in the instruction, or in what, from its brevity, it fails to instruct the jury.

6. This error is based upon the court's instruction, of its own motion, as follows:

"As to the plaintiffs' second cause stated in his petition, it is not deemed necessary to give you further instructions. The jury will determine from the evidence whether the plaintiffs should recover thereon for the two steers.

"As to small money items alleged in the answer outside the set-off above described, defendant pleads it is not deemed necessary to give you further instructions; the jury will determine from the evidence whether the defendant has made out a case thereon, or any part thereof. But as to the plaintiffs' first cause of action for money paid on bargain for the 117 cattle, something more may be added, and then something relating to the set-off, concerning eight car loads of cattle pleaded in the answer."

The second cause of action referred to is, in substance, that on June 20, 1883, at the time of the delivery of the 235 head of fat cattle, by defendant to plaintiffs, two steers of the number delivered were turned back and left with the defendant for lack of railroad transportation at the time; that the plaintiffs afterwards demanded the steers of the defendant, who refused to deliver them or to pay their value of $138.18.

The defendant in his answer, among other charges against the plaintiffs, debits them with the charge of $15 for the keeping and caring for the two steers, and among the credits allowed plaintiffs, in their whole transactions, is that of " $114.92 for the sale of two steers July 17, 1883."

This instruction, in my view, fairly submits the proposition whether the two steers, the ownership of which, in the plaintiffs, is admitted by defendant's answer, and the sale of which, by defendant, is also admitted, be charged to the defendant on the theory of the plaintiffs, expressed in their second cause of action, or upon that of the defendant, as set up in his answer.

The court might well have used stronger expressions, and at greater length in its instruction, but it is doubtful if it would have been clearer to the comprehension of the jury; and, on the contrary, it is probable that cumulative illustrations, rather than enlightening the jury upon the issues, would have tended to confuse them.

7. The seventh error argued in the brief, is based upon the fifth instruction of the court, of its own motion, which appears to have been but a summary and repetition of the first, second, and third instructions ruled upon, and will not be further considered.

8. The eighth error argued is based upon the sixth instruction of the court, of its own motion, that "if there was such a contract as stated in the first cause of action in the petition, and the plaintiff Walker, on behalf of himself and plaintiff Barker with defendant, and afterwards plaintiff Barker, without the knowledge and consent of plaintiff Walker, sold one-half his (Barker's) interest in the cattle to the witness Draper, that would not make Draper jointly interested with these plaintiffs in such a way as to be a bar to plaintiffs' recovery in this action, but, on the contrary, plaintiffs would still be the real parties in interest for the purposes of this action."

The plaintiffs allege that at the time of the transaction constituting their cause of action they were partners in the name of Walker & Barker, and the defendant in his amended answer alleged that he was informed and believed "that the plaintiff Walker, in all the transactions mentioned in the amended answer (referring to the amendment of his answer on which the suit was to be tried) acted for himself and his partner Barker, and so alleged the fact to be."

There is evidence to the effect that after the original purchase by Walker and Barker of the fat cattle, as alleged in their petition, one Draper bargained with Barker to share with him equally in the cattle deal.

Walker, in his testimony, states that he never agreed to this arrangement between Barker and Draper, nor was he aware of its existence until after the events leading up to this suit.

The question presented is whether the agreement of Barker and Draper constituted Draper an indispensable

party to this action against defendant for moneys advanced
on a contract for cattle which the defendant failed to de-
liver.  The only citation of authority to this question is
that of counsel for defendants in error to Lindley on Part-
nership, pp. 363–4*—that "it is one of the fundamental
principles of partnership law that no person can be intro-
duced as a partner without the consent of all those who,
for the time being, are members of the firm." (*Tabb v.
Gist,* 1 Brock., 33.)  This authority supports the instruc-
tion and the principle involved, and is believed to be a cor-
rect rule.  The logic of it, and the extent of our decision
is that under the pleadings and evidence in this action,
Walker and Barker are the sole parties in interest as
plaintiffs, and that the action is brought in the name of the
proper parties.

9. The ninth assignment is based upon the seventh in-
struction of the court of its own motion, that "the burden
of proof is upon the plaintiffs to make out their case by a
preponderance of the evidence, as to each cause of action
stated in the petition; and as to each cause of action, if
they have done so, they should recover, and if not, they
should fail."

The objection of the plaintiff in error to this instruction
is stated to be that under the pleadings the plaintiffs might
make out their case as to each cause of action stated in the
petition by a preponderance of evidence and still fail to re-
cover, as the defendant's claim, set forth in the answer, ex-
ceeded that of the plaintiffs.  This, as I understand it, is
not literally true, and were it, by reference to the words of
the instruction it is to be understood, and doubtless was by
the jury, as referring to the issues made up by the plead-
ings upon each cause of action as set out, and is therefore
correct.

10. The tenth error assigned is based upon the eighth
instruction of the court, of its own motion; but as no crit-
icism is offered as to the legal propriety of the charge, and

no material error discovered in its application to the issues to be tried, it will not now be further considered.

11. The eleventh error assigned is based upon the ninth instruction of the court, of its own motion, that "the burden of proof is upon defendant to make out his set-offs pleaded in his answer, by a preponderance of the evidence, and if he has done so, he should recover thereon, and if not, he should fail thereon."

Upon this error counsel say that the court failed to remember that the plaintiffs admitted the $14 of borrowed money and pleaded payment, and that they also admitted in their reply other charges and expenses set up in the answer, but pleaded that it was settled for by the transfer of a sow and seven pigs. By these admissions the burden of proof was laid on the plaintiffs to prove the payments and settlements. This objection appears to be well taken, so far as relates to the charge of $14 borrowed money, but not as to "other charges and expenses," set up in the answer, "for the trouble of requesting the persons of whom the stock was purchased to hold the same for a longer period than that provided by the original contract"; and on that point I quote the third and fourth paragraphs of the plaintiffs' reply:

"3. That for the extra trouble of defendant, occasioned by the delay of plaintiffs in receiving a portion of said cattle, plaintiffs delivered to defendant a sow and seven pigs, which defendant accepted in full payment for his said trouble."

"4. That they deny that they promised to pay defendant any sum whatever by reason of their failure to accept a portion of said cattle within the time agreed upon; but, on the contrary, the defendant agreed with them to make no charge whatever therefor."

This reply of the plaintiffs was wholly gratuitous on their part, as neither in the answer of the defendant nor the tabular statement accompanying it is there any charge.

for "the extra trouble" mentioned, or for any services occasioned by the plaintiffs' delay in accepting a portion of the cattle.     So that these paragraphs of the plaintiffs' pleadings, as well as their sow and pigs, were mere gratuities.

12. The twelfth error is based on the tenth instruction of the court, of its own motion, that "inasmuch as something has been said about unsettled partnership account, in reference to the eight car loads of cattle, you are instructed that if the set-off claimed on account of the eight car loads involved an unsettled partnership accounts, it could not be utilized as a set-off in this action.     But a purchaser of an undivided interest in certain cattle, under an agreement to market them and apportion profits or losses among the joint owners in proportion to their respective shares does not constitute a partnership; but an agreement to buy and sell jointly and share profits and losses would constitute a partnership agreement."

The objection offered by counsel is, that the instruction is not clear, explicit, and definite, and that it would tend to mislead the jury; but these abstract objections do not discover particular errors of sufficient importance to be further considered; and as none are obvious to the writer, he refrains from discussing it.

13. The thirteenth error is to the eleventh instruction of the court, of its own motion, as follows: "The three controversies in the case to which the court specially invites your attention are: On what was the payment of the $1,000 by check to defendant, which plaintiff Walker testified was paid on the 117 cattle, and defendant testified was paid on the eight car load agreement, made?     On what was the payment of $1,000 by check to witness Kerr, which plaintiff Walker testifies was paid on the 117 cattle, and witness Kerr testifies was paid to him for keeping certain cattle longer, made?     And is defendant entitled to recover on the set-off relating to the eight car loads of cattle as pleaded in the answer?"

The objection of counsel is that the instruction gives undue prominence to three branches of the case, to the disparagement of other considerations. The three controverted points are carefully stated, and appear to be the important questions in the controversy to which the attention of both the court and jury should have been specially directed. The minor questions had been already considered, so that in again referring to these three more important ones, in the manner stated, no injustice was done. No prominence is given to "one branch or item of evidence," nor mention of the evidence on one side to the prejudice of the other. The court merely points to the three principal questions which, from conflicting evidence bearing thereon, are particularly entitled to be carefully considered.

14. This error is based upon the refusal of the court to instruct the jury at the request of the defendant as follows: "The court instructs the jury that if they believe from the evidence in this action that D. S. Draper was a copartner with Perry Walker and Samuel Barker in the purchase of the cattle in controversy, and has an interest in the amount sought to be recovered in this action, and that D. S. Draper is one of the real parties in interest in said amount claimed, then the jury should find for the defendant."

This request, in its application to the issues, is nearly, if not altogether, the antithesis of the sixth instruction already considered in the eighth assignment of errors. If that instruction was properly given, as held to be, then, of necessity, the defendant's request was properly refused.

15. The fifteenth error assigned is the overruling of the defendant's objections to twenty-two separate questions propounded by plaintiffs to witnesses on the trial.

As counsel in their brief have declined to point out specifically wherein either or any of these questions were improper, or wherein any were erroneously overruled, and the errors not being obvious of themselves, they will not be further considered here.

16. The sixteenth and final error assigned is that the verdict is not sustained by sufficient evidence and is contrary to law.

To this error the brief is confined to the question of Draper's interest in the matter of the suit.

Upon a careful reading of the record, and an examination of the authorities cited, I have reached the conclusion that the verdict is supported by the evidence, with the one exception mentioned of the $14 borrowed money. Upon that sum the evidence is still sufficient to sustain the verdict, but for the misdirection of the court as to the weight of evidence applicable to that claim it will be held, to that extent, that the verdict is unsustained and set aside.

The judgment of the district court is therefore reversed unless the plaintiffs below shall, within twenty days from the date of the filing of this opinion, enter a remittitur in this court of the sum of $14 as of the date of the rendition of the judgment in the district court, but in case such remittitur is entered within the time specified the judgment in all other respects is affirmed.

February 18, 1890. The above remittitur having been filed the judgment is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.